David R. YOUNG, Appellee,

v.

MID–CONTINENT CASUALTY
COMPANY, Appellant.

No. 65962.

Supreme Court of Oklahoma.

Oct. 6, 1987.

Speck & Dell by D. Norman Easter, II, Oklahoma City, for appellee.

Looney, Nichols, Johnson & Hayes by E. Bay Mitchell, III, Oklahoma City, for appellant.

Green, James, Williams & Elliott by Kenneth W. Elliott, Oklahoma City, for amicus curiae Dairyland Ins. Co.

LAVENDER, Justice:

The facts in this case were not controverted. The matter was submitted to the trial court on motion for summary judgment on the question of the effectiveness of an exclusionary clause in an automobile liability insurance policy which excluded

coverage for the operation of the insured vehicle if operated by any person under the age of twenty-five except the named insured who was not a relative and a resident of the same household as the named insured.[1] The trial court found that the exclusion was not effective for the reason that it was in conflict with the public policy embodied in Oklahoma's Compulsory Liability Insurance provisions as they stood at the time coverage under the policy at issue was claimed.[2]

Title 47 O.S. 1981 § 7–601, provided:

Every owner of a motor vehicle registered in this state, other than a licensed used motor vehicle dealer, shall, at all times, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. As used herein, "security" means:

1. A policy or bond meeting the requirements of Section 7–204 of this title;

2. A deposit of cash or securities having the equivalency of limits required under Section 7–204 of this title as acceptable limits for a policy or bond; or

3. Self-insurance, pursuant to the provisions of Section 7–503 of this title, having the equivalency of limits required under Section 7–204 of this title as acceptable limits for a policy or bond.

Charles H. Young, Jr., entered into a contract with appellant Mid-Continent Casualty Company for an automobile liability policy which satisfied the requirements of subsection one of 47 O.S. Supp. 1976 § 7–601(A). This policy was numbered FA 634218. The exclusionary clause in question was contained in an endorsement to this policy which was signed by Charles H. Young, Jr., and effective as of June 14, 1978. Policy No. FA 634218 was periodically renewed, and, on February 23, 1981,

coverage of the policy was switched from the vehicle previously described in the policy to a 1979 Ford pickup.

On June 17, 1981, Charles H. Young, Jr., loaned his 1979 Ford pickup to his cousin, appellee David R. Young. At this date David R. Young was under the age of twenty-five, and although a relative of the named insured under Policy No. FA 634218, was not a resident of the same household. Appellee was involved in a traffic accident in the borrowed vehicle and was alleged to be liable for damages to a second vehicle involved in the accident.

Appellee made demand upon appellant to defend him in the claim arising from the accident. Appellant refused on the basis of the exclusionary clause in question. Appellee was required to pay damages to the owner of the second vehicle. Appellee subsequently brought this action against appellant to recover the sums he was required to pay.

Both appellant and appellee moved for summary judgment in the case. The trial court found, as a matter of law, that the exclusion was against public policy and of no effect for the reason that it was in conflict with 47 O.S. 1981 § 7–601 which required that security be maintained for loss to *any* person arising out of the ownership, maintenance, operation or use of the vehicle.

Appellant and amicus curiae now challenge the trial court's finding of conflict between the exclusionary clause and the public policy embodied in the compulsory liability insurance provisions of Title 47. Two primary arguments are presented in this appeal. The first, as presented by appellee, is that the provisions of 47 O.S. 1981 § 7–324 apply to the interpretation of 47 O.S. 1981 §§ 7–601 through 7–607 and necessarily govern the allowable exclusions in a policy procured to meet the require-

---

1. The limitation of coverage clause in issue stated:

[S]uch insurance as is afforded by the policy for Bodily Injury Liability and Property Damage Liability with respect to persons, other than the named insured, does not apply to any person under 25 years of age while operating the automobile, unless such person is a relative of the named insured residing in the same household as the named insured.

2. 47 O.S. 1981 §§ 7–601 through 7–607.

ments of the compulsory liability insurance provisions. The second argument presented in the appeal deals with the interpretation of public policy as reflected in the compulsory liability insurance provisions, which make no reference to allowable exclusions.

Appellant and amicus curiae, in argument, have relied on the compulsory liability insurance provisions as they stand at present date to support their assertions regarding the policy reflected by these statutes. However, these provisions are the result of substantial additions and amendments subsequent to the dates involved in this action. See Okla. Sess. Laws 1982, ch. 355; Okla. Sess.Laws 1983, ch. 49 § 1; Okla.Sess. Laws 1984, ch. 181 § 2 and ch. 253 § 3; Okla. Sess.Laws 1985, ch. 129 § 1; Okla.Sess. Laws 1986, ch. 45 § 1 and ch. 138 § 1. Our consideration of legislative intent regarding public policy at the time of the incident in question is necessarily restricted to the legislation as it stood at that date. We express no view as to how the subsequent amendments to the statutes would have affected the outcome of this matter had such changes been in effect.

In support of the argument that section 7–324 governs the allowable exclusions under sections 7–601 through 7–607, appellee cites this Court's opinion in the case of *Looney v. Farmers Insurance Group.*[3] In *Looney* this Court considered an exclusionary clause in a liability policy which excluded coverage for liability to any member of the insured's household or to the named insured. In that case the wife of the named insured had filed suit against her husband for damages she received in an automobile accident in which she had been a passenger and her husband, the named insured, had been the driver. The policy in that case defined the spouse of the named insured as also being within the definition

of named insured under the policy. This Court, without mentioning whether the insurance policy had been secured to meet the requirements of the Oklahoma Financial Responsibility Act's provisions for maintenance of security after an accident or for the compulsory maintenance of security upon registration of the vehicle in this state,[4] decided that the exclusion was effective. In doing so the Court stated that section 7–324 governed the allowable exclusions under sections 7–601 through 7–607.

In *Looney* this Court, without elaboration of its reasoning, determined that the various articles of chapter seven of Title 47 were to be intrepreted as a single piece of legislation. However, in the later decided case of *Beavin v. State ex rel. Department of Public Safety,*[5] this Court, while recognizing that the various articles of the chapter on Financial Responsibility were related in their subject matter, determined that the articles governing proof of financial responsibility following an accident (Articles II and III) were separate legislative acts from that establishing compulsory liability insurance (Article VI). The Court stated the rule that different legislative acts dealing with the same subject matter must be construed together as a harmonious whole so as to give effect to each.[6] In *Beavin* it was determined that a conflict which would apparently arise from an attempt to apply an Article II provision to the construction of Article VI could be simply avoided and the enactments rendered harmonious by limiting the application of the Article II provision to Articles II and III. This was determined to have been the intent of the Legislature.

■ Much the same situation is presented in the present case by the proposed application of the Article III provision, section 7–324, to the interpretation of Article

---

**3.** 616 P.2d 1138 (Okla.1980).

**4.** Title 47 O.S. 1981 chapter 7 is the chapter on Financial Responsibility. Article II and Article III of that chapter deal with the requirements of insuring the ability of a driver to respond to damages arising from a motor vehicle accident *after* the accident has occurred. The later enacted Article VI of that chapter requires the

maintenance of security against potential liability *prior to* the occurrence of any accident.

**5.** 662 P.2d 299 (Okla.1983).

**6.** 662 P.2d at 302; and see *Johnson v. Ward,* 541 P.2d 182 (Okla.1975).

VI. The language of section 7–324 clearly indicates that its scope is limited to Article III. Section 7–324 defines a liability policy, but clearly speaks in terms of a policy of insurance to be provided as proof of financial responsibility for the future. There appears no reason why this clearly expressed intent, limiting the application of section 7–324, should not be given effect.[7] Insofar as *Looney* indicated that section 7–324 is the proper statute for determining exclusion validity under the provisions of Article VI, which has established a compulsory liability insurance requirement in Oklahoma, that language is expressly disapproved.

■ What remains the fundamental issue in this case is the determination of the intent of the Legislature in enacting Article VI of the chapter on financial responsibility, and the determination of whether the exclusion in the insurance policy involved in this case is compatible with that intent. In *Beavin*,[8] this Court did make inquiry into the intent of the Legislature in enacting 47 O.S. 1981 § 7–601, and stated:

> From the language of § 7–601, the Legislature has clearly established a comprehensive compulsory liability insurance law. There can be no doubt that the legislative intent was to provide that no motor vehicle shall be operated on the highways of Oklahoma unless the vehicle is insured or "secured."

Other states, in examining their compulsory liability insurance legislation have come to the conclusion that such legislation embodies a public policy that innocent victims of the negligent operation of motor vehicles should be compensated for their injuries.[9] The perspective which this public policy adopts is that of the innocent victim rather than that of the insurer or the insured tort-feasor.[10] Such a construction would appear to be consistent with the intent previously deduced by this Court from the plain language of section 7–601, which focuses on insuring the availability of security to cover losses sustained by *any person* arising out of the ownership, maintenance, operation or use of a vehicle registered in the State of Oklahoma.

Although appellant and amicus curiae have cited authorities for the general proposition that a bargained for exclusionary clause in a liability insurance policy, such as the under-age exclusion here involved, is effective and enforceable, those authorities do not appear to have considered the effect of compulsory liability insurance legislation on such clauses. Cases from jurisdictions which have considered the effect of such legislation have struck down exclusionary clauses which had the effect of limiting the liability of the insurer to an innocent victim of the negligent operation of the insured vehicle.[11]

---

7. This result is clearly in line with the view of other jurisdictions concerning the separate and independent nature of legislation creating financial responsibility acts (assuring responsibility following an accident) and that creating mandatory liability coverage prior to any accident. See *Walker v. American Family Mut. Ins. Co.,* 340 N.W.2d 599 (Iowa 1983); *Fields v. Western Preferred Cas. Co.,* 437 So.2d 344 (La.App.1983); *Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 656 P.2d 820 (1983).

8. 662 P.2d at 302.

9. *Cotton States Mutual Ins. Co. v. Neese,* 254 Ga. 335, 329 S.E.2d 136 (1985); *Bishop v. Allstate Ins. Co.,* 623 S.W.2d 865 (Ky.1981); *Fields v. Western Preferred Cas. Co.,* supra note 8; *Transamerica Ins. Co. v. Royle,* supra note 8. And see *Estep v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 105, 703 P.2d 882 (1985) (interpreting a financial responsibility act to require liability insurance *prior* to accident).

10. See *Cotton States Mutual Ins. Co. v. Neese,* supra; and see *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441 (1982).

11. *Cotton States Mut. Ins. Co. v. Neese,* supra note 9 (striking down clause excluding liability coverage when insured was attempting to avoid apprehension or arrest); *Bishop v. Allstate Ins. Co.,* supra note 9 (striking down clause excluding coverage to members of household); *Fields v. Western Preferred Cas.. Co.,* supra note 7 (striking down clause excluding coverage of named employee); *Transamerica Ins. Co. v. Royle,* supra note 7 (striking down family exclusion clause); and see *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870 (N.D.1975) (applying financial responsibility law provisions to policy purchased prior to accident and striking down family exclusion clause); *Estep v. State Farm Mut. Auto. Ins. Co.,* supra note 9 (interpreting financial responsibility act to require insurance prior to accident and striking down family exclusion).

It is clear that in the present case to give effect to the under-age exclusionary clause would have the effect of limiting the liability of the insurer to an innocent victim of the negligent operation of the insured vehicle. As previously discussed, the provisions of our compulsory liability insurance legislation, as it stood at the time of this case, contained no indications of an intent to allow any differentiation as to coverage available to *any* victim of an insured vehicle's operation or use.

 We find the intent of the Legislature embodied in 47 O.S. 1981 § 7–601, to be the requirement that any vehicle operated on the highways of Oklahoma be secured against liability to innocent victims of the negligent operation or use of the insured vehicle. We do not necessarily find that this intent is so broad as to eliminate all possible bargaining regarding liability exclusions which may be contained in the required liability insurance policies. However, we find this intent to require a minimum of protection to any party who is not a party to the contract.[12] Because the exclusionary clause in question has the effect of limiting the insurer's liability to an innocent victim *who was not a party to the contract*, we find the clause violative of the public policy embodied in 47 O.S. 1981 § 7–601.

The judgment of the trial court is AFFIRMED.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, OPALA, WILSON and KAUGER, JJ., concur.

SIMMS and SUMMERS, JJ., dissent.

---

**12.** The result reached here today is consistent with that reached in *Looney v. Farmers Ins. Group,* supra note 4, in that even though the court indicated that it would use section 7324 to evaluate exclusionary clauses under section 7–601, it approved a clause excluding coverage of those coming under the definition of named insured in the insurance policy, an exclusion clearly not sanctioned by section 7–324, but which involved the risk of those who were party to the contract. And see *Unah v. Martin,* 676 P.2d 1366 (Okla.1984) where this Corut abrogated the rule of parental immunity on policy grounds very similar to the Court's reasoning in *Mutal of Enumclaw v. Wiscomb,* supra note 10, regarding the limitation of liability to potential victims having no control over the insurance contract or the operation of the insured vehicle.