**CAMIRA JOSEPH, Appellant/Defendant**
**v.**
**INTER-OCEAN INSURANCE AGENCY, INC., Appellee/Plaintiff**

S. Ct. Civil No. 2011-0111
Supreme Court of the Virgin Islands
September 25, 2013

ESZART A. WYNTER, SR., ESQ., Law Offices of Eszart Wynter, Sr., St. Croix, USVI, *Attorney for Appellant*.

YVETTE D. ROSS-EDWARDS, ESQ., Law Offices of Yvette Ross-Edwards, St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*. SWAN, *Associate Justice*, concurring in part dissenting in part.

## OPINION OF THE COURT

(September 25, 2013)

HODGE, *Chief Justice*. Camira Joseph appeals the Superior Court's order granting summary judgment in favor of Inter-Ocean Insurance Agency, Inc. We conclude that the endorsement in Joseph's car insurance policy excluding liability coverage for anyone driving or operating her vehicle under the age of twenty-five is invalid, and that Inter-Ocean had no right to seek reimbursement from Joseph. Accordingly, the Superior Court erred in granting Inter-Ocean's motion for summary judgment.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

The facts of this case are not in dispute. On November 8, 2002, Joseph allowed her eighteen-year-old brother Sheldon Joseph to use her insured automobile. While driving Joseph's vehicle on the Melvin H. Evans highway in St. Croix, Sheldon collided into the median. The collision caused injuries to two passengers riding in the car, as well as damage to government property. According to the Virgin Islands Police Department Uniform Traffic Accident Report, two passengers in the car sustained injuries and a guard rail was damaged. As a consequence, Sheldon was cited for reckless driving.

At the time of the accident Joseph's vehicle was insured through Inter-Ocean.[1] The passengers and the Government filed claims with Inter-Ocean for damages sustained as a result of the accident. Inter-Ocean advised Joseph of its assessment of the damages and its intent to tender

---

[1] The Underwriters at Lloyds insured Joseph's vehicle.

the policy limits.[2] After two months had elapsed without receiving a response from Joseph, Inter-Ocean paid $10,000 to satisfy the claims of one of the injured parties. Additionally, Inter-Ocean paid $287.25 to the Government to satisfy its claim for damages to the guard rail. Inter-Ocean subsequently sought reimbursement from Joseph for the money it paid the passenger and the Government. It alleged that Joseph breached her insurance policy by allowing her brother — who was under twenty-five years old — to operate her vehicle, and that under the policy, Joseph was required to reimburse Inter-Ocean. Joseph refused, claiming that because her liability insurance policy does not cover drivers under the age of twenty-five, Inter-Ocean had no obligation to pay the claim, and since Inter-Ocean had no obligation to pay the claim, it also has no right to seek indemnification. Inter-Ocean thus filed suit in the Small Claims Division of the Superior Court. Joseph subsequently filed a motion to transfer the matter to the Civil Division, which was granted on March 6, 2006. Once the matter was transferred to the Civil Division, both parties filed motions for summary judgment.

On October 17, 2011, the Superior Court entered a memorandum opinion and order granting Inter-Ocean's motion for summary judgment and awarded Inter-Ocean $10,287.25 in damages.[3] In the October 17, 2011 Order granting Inter-Ocean's motion for summary judgment, the trial court noted that Joseph's insurance policy included an endorsement which excluded coverage for drivers under the age of twenty-five. It further noted that Joseph's policy included a provision that entitled Inter-Ocean to seek subrogation of any payment made under the policy where the policy holder was in breach of the contract. The trial court thus concluded that Joseph had breached the agreement by allowing her eighteen-year-old brother to operate her vehicle,[4] and although Inter-Ocean was required under 20 V.I.C. § 704(c) to pay the $10,287.25 in damages, it retained the right to seek subrogation of this payment from Joseph because she breached the insurance contract by allowing someone under the age of twenty-five to operate the covered vehicle. Accordingly,

[2] The policy limits were $10,000 per person for bodily injury, with a cap of $20,000 per accident, and $10,000 for property damage per accident.

[3] Inter-Ocean was also awarded reasonable costs and attorney fees.

[4] There is some conflict in the record as to whether Sheldon Joseph is Joseph's son or brother. His age at the time of the accident, however, is all that is relevant.

the trial court concluded that there was no genuine issue of material fact and Inter-Ocean was entitled to judgment as a matter of law. Joseph filed a timely notice of appeal on November 14, 2011.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). An order is considered to be "final" for purposes of this statute if it "ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Rodriguez v. Bd. of Corrs.*, 58 V.I. 367, 370 (V.I. 2013); *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011). Because the Superior Court's October 17, 2011 Order ended the litigation on the merits, it constitutes a final judgment; therefore, this Court possesses jurisdiction over this appeal.

We exercise plenary review of a Superior Court's grant of summary judgment. *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 468 (V.I. 2013); *United Corp. v. Tutu Park, Ltd.*, 55 V.I. 702, 707 (V.I. 2011); *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (citing *Maduro v. Am. Airlines, Inc.*, S. Ct. Civ. No. 2007-0029, 2008 V.I. Supreme LEXIS 24, *7 (V.I. Feb. 28, 2008) (unpublished)). "On review, we apply the same test that the lower court should have utilized." *Pollara*, 58 V.I. at 468; *United Corp.*, 55 V.I. at 707. "Because summary judgment is a drastic remedy, it should be granted only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *United Corp.*, 55 V.I. at 707 (quoting former wording of FED. R. CIV. P. 56(c)) (citations omitted); *see also Anthony v. FirstBank V.I.*, 58 V.I. 224, 228 (V.I. 2013). Likewise, this Court's review of the trial court's construction of a statute is plenary. *Billu v. People*, 57 V.I. 455, 461 (V.I. 2012); *PSC v. WAPA I*, 49 V.I. 478, 483 (V.I. 2008).

### B. Summary Judgment

The sole issue before this Court on appeal is whether the Compulsory Automobile Liability Insurance Act — 20 V.I.C. § 701 *et seq.* — should

supersede the named driver exclusion in Joseph's automobile liability insurance policy.[5]

■ Joseph's automobile liability insurance policy contained an endorsement which excluded liability coverage for anyone under the age of twenty-five who was driving or operating Joseph's vehicle. The endorsement states that "the insurance afforded by this policy shall not apply while any vehicle covered by this policy is being driven or operated by any person under the age of twenty-five (25) years." The Virgin Islands Compulsory Automobile Liability Insurance Act, however, requires an owner of a motor vehicle to purchase a policy of liability insurance in specified amounts as a prerequisite to registering a motor vehicle in this Territory. *See* 20 V.I.C. § 701. Pursuant to title 20, section 703:

> An owner's policy of liability insurance, hereinafter referred to as the 'motor vehicle liability policy':
>
> (a) shall designate by explicit description, or by other appropriate reference inclusive of the vehicle identification number, all vehicles with respect to which coverage is to be granted; and
>
> (b) shall insure the person named therein and any other person, as an insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicle or vehicles in the Virgin Islands, subject to minimum coverage, exclusive of interest and costs, with respect to each vehicle . . . .

Furthermore, this statutory omnibus clause supersedes and invalidates any conflicting policy provision. *See* 20 V.I.C. § 701 *et seq.* (requiring all li-

---

[5] Neither party has properly framed this issue. Joseph argues that the trial court erred in granting Inter-Ocean's motion for summary judgment because her liability insurance policy does not cover drivers under the age of twenty-five, and Inter-Ocean had no obligation to pay the claim because her eighteen year old brother was operating the vehicle at the time of the accident. Joseph thus argues that since Inter-Ocean had no obligation to pay the claim, it also has no right to seek indemnification. In contrast, Inter-Ocean argues that it was obligated to pay the claim because the mandatory insurance laws in the Virgin Islands rendered the named driver exclusion invalid and unenforceable. Oddly, Inter-Ocean also argues that it is entitled to indemnification based on this same supposedly invalid and unenforceable endorsement. Both of these arguments are flawed and misapply the applicable law.

ability insurance policies issued in this Territory to comply with the require-
ments of the Compulsory Automobile Liability Insurance Act); 20 V.I.C.
§ 704(c)(3) ("The policy, the written application therefor, if any, and any
rider or endorsement *which does not conflict with the provisions of this
Chapter* shall constitute the entire contract between the parties.") (emphasis
added); *see also Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 663 S.E.2d
484, 490 n.5 (2008) (statute defining an insured under an automobile in-
surance policy is controlling if the terms of an insurance policy excluding
coverage are in conflict with the requirements of the statute); *Fields v. W.
Preferred Cas. Co.*, 437 So.2d 344, 346-47 (La. Ct. App. 1983) (same); 7
Am. Jur. 2d *Automobile Insurance* § 225 (same) (collecting cases).

██ Here, the insurance contract between Inter-Ocean and Joseph is
a compulsory liability policy to the extent of the mandatory minimum
liability coverage set forth in title 20, section 703.[6] And under section
703(b), drivers like Sheldon Joseph, who operate an insured vehicle with
permission from the named insured, must be extended automobile
insurance for the compulsory policy limits, regardless of whether that
driver may be excluded from coverage by the terms of the insurance
policy. The endorsement excluding any driver or operator under the age
of twenty-five from coverage under the policy at issue in this case thus
conflicts with the statutory omnibus clause and is invalid to the extent of
the statutory minimum liability coverage.[7] *See Fields*, 437 So.2d at

---

[6] Title 20, section 703(b) requires an automobile insurance liability policy for private pas-
senger vehicles to provide minimum coverage of $10,000 for bodily injury caused to any one
individual from a single accident, $20,000 per accident for bodily injury for two or more
persons arising from a single accident, and $10,000 per accident for property damage.

[7] The partial dissent invokes section 711 of title 20, which provides that "[n]othing in this
chapter shall be construed as preventing the plaintiff in any action of law, from relying for
relief upon any other remedy provided by law," for the proposition that Inter-Ocean may
nevertheless sue Joseph for subrogation. However, the obvious intent of section 711 is to
clarify that collecting from a driver's mandatory automobile insurance is not the only remedy
available to an accident victim. Moreover, as noted above, subrogation is an action of equity,
and thus we question whether it would constitute an "action of law."

In any case, the partial dissent premises its holding that Inter-Ocean is entitled to
subrogation entirely on the fact that "Joseph was given the option but purposefully chose not
to purchase insurance coverage for persons under the age of 25." (Dissent Op. 7.) As ex-
plained in greater detail above, section 703 mandates that a motor vehicle liability policy
"insure the person named therein and any other person, as an insured, using any such vehicle
or vehicles with the express or implied permission of such named insured. . . ." 20 V.I.C.
§ 703(b). Thus, Joseph has not been unjustly enriched, since she was under absolutely no

346-47. The policy must accordingly be reformed to provide the mandatory minimum liability coverage set forth in section 703 for the person named in the policy, as well as any other person using the insured vehicle with the express or implied permission of the named insured. *See id.* The claims arising from Sheldon Joseph's operation of Joseph's vehicle on November 8, 2002 are therefore covered under Joseph's automobile liability insurance policy with Inter-Ocean.

■ ■ Furthermore, Inter-Ocean had no right to seek reimbursement from Joseph under the insurance contract's subrogation clause. Subrogation is an equitable right. "By definition, subrogation can arise only with respect to the rights of an insured against third persons to whom the insurer owes no duty. It follows and, indeed, is now well established that an insurer cannot recover by means of subrogation against its own insured." *Remy v. Michael D's Carpet Outlets*, 391 Pa. Super. 436, 571 A.2d 446, 447 (1990) (citations omitted). *See* 2 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 10:7 (5th ed. 2012) (collecting cases); 46A C.J.S. INSURANCE § 1997; 16 COUCH ON INSURANCE (3d) § 224:1; 3 LAW AND PRAC. OF INS. COVERAGE LITIG. § 42:6. Similarly, since the policy endorsement excluding liability coverage for anyone under the age of twenty-five who drives or operates Joseph's vehicle is invalid and unenforceable, Inter-Ocean had no right to seek reimbursement or indemnification from Joseph under a breach of contract theory. Section 704(c)(3) renders the exclusionary endorsement invalid to the extent that it is in direct conflict with section 703(b), and section 703(b) mandates that an owner's automobile insurance policy shall "insure . . . any other person . . . using any such vehicle with the express or implied permission" of the named insured. There is no question that Sheldon was driving the vehicle with Joseph's permission. Accordingly, the policy endorsement — at least to the compulsory limits — was never effective or enforceable, and Joseph did not breach the insurance contract by allowing her eighteen year old brother to use her vehicle. *See McIntyre Framing, Inc. v. Interstate Fire & Cas. Co.*, No. E052666, 2012 Cal. App. Unpub. LEXIS 636 at *23 (Cal. Ct. App. Jan. 26, 2012) (unpublished) (holding that party cannot succeed on breach of contract claim when

---

obligation to pay extra to have her brother insured under her policy — on the contrary it was Inter-Ocean, by attempting to charge Joseph additional money to provide coverage it was required to provide under section 703, which sought to receive a windfall in this case.

endorsement allegedly breached is void and unenforceable). The trial court therefore erred in granting Inter-Ocean's motion for summary judgment.[8]

Our conclusion is consistent with how courts in other jurisdictions have interpreted similar compulsory liability insurance statutes. In *Fields*, an insurer issued a motor vehicle liability policy to an insured which included an exclusion that said that no liability coverage shall be afforded while the insured's vehicles were being driven by a particular person. 437 So.2d at 345. The particular person excluded from coverage under the insured's policy was later involved in an accident while driving the insured's vehicle. *Id.* The court concluded that the exclusion was invalid under the state's Compulsory Motor Vehicle Liability Security Law, which requires all motor vehicle liability policies to insure the named insured, as well as any other person using the insured vehicle with the express or implied permission of the named insured.[9] *Id.* at 346 ("A statutory omnibus clause supersedes conflicting policy provisions."). Thus, the court held that when "a policy of liability insurance is written on a Louisiana motor vehicle, the minimal liability coverage is controlled by the statute and the statutory omnibus coverage provision will override or supersede a policy provision or endorsement excluding a named driver."[10] *Id.* at 346-47.

---

[8] We note that named driver exclusions are generally valid on any insurance purchased in excess or addition to the mandatory minimum liability coverage set forth in section 703.

[9] Under Louisiana law, all motor vehicle liability policies are required to "insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle." LA. REV. STAT. ANN. § 32:900(B). The statute — similar to its Virgin Islands counterpart — then goes on to set out the mandatory minimum liability coverage required for all covered motor vehicles. *See id.* The only significant difference between Louisiana's statute and its Virgin Islands counterpart is subsection (B)(2)(d), which states:

> An owner may exclude a named person as an insured under a commercial policy if the owner obtains and maintains in force another policy of motor vehicle insurance which provides coverage for the person so excluded which is equal to that coverage provided in the policy for which the person was excluded. The alternative coverage is required for both primary and excess insurance.

The Virgin Islands Compulsory Automobile Liability Insurance Act has no similar provision.

[10] It is important to note, although it was not applicable in *Fields*, that Louisiana has a statute that allows insurance contracts to include a provision requiring the reimbursement to the

·In *Young v. Mid-Continent Casualty Co.*, 1987 OK 88, 743 P.2d 1084, 1085 (1987), an insured loaned his insured vehicle to his cousin, who was under the age of 25 and who subsequently was involved in an automobile accident. The insurer refused to defend or indemnify the insured, contending that the under-age exclusion was effective and enforceable and it, therefore, extinguished any duty on the part of the insurer to defend or indemnify the insured. *Id.* The court, however, concluded that since the legislature's "intent [was] to require a minimum of protection to any party who is not a party to the contract . . . the exclusionary clause in question has the effect of limiting the insurer's liability to an innocent victim who was not a party to the contract . . . [and is] violative of the public policy embodied." *Id.* at 1088. The *Young* court thus struck down the exclusionary endorsement contained in the insurance policy on the grounds that "the . . . clause would have the effect of limiting the liability of the insurer to an innocent victim of the negligent operation of the insured vehicle . . . . [and] provisions of our compulsory liability insurance legislation . . . contain[] no indications of an intent to allow any differentiation as to coverage available to any victim of an insured vehicle's operation or use." *Id.* (emphasis omitted). We agree with the analysis of these courts and conclude that the trial court erred in granting Inter-Ocean's motion for summary judgment.[11]

## III. CONCLUSION

The endorsement in Joseph's liability insurance policy which excluded coverage for anyone under the age of twenty-five who was driving or operating Joseph's vehicle conflicts with the Virgin Islands Compulsory Automobile Liability Insurance Act's omnibus clause. Accordingly, the exclusion is invalid and the damages arising out of Joseph's brother's use

---

insurer by the insured of amounts the insurer would not have been obligated to pay except for the statutory requirements. *See* LA. REV. STAT. ANN. § 32:900(H) ("Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this Chapter."). The Virgin Islands Compulsory Automobile Liability Insurance Act, however, has no similar provision.

[11] The partial dissent notes that this Court "fail[ed] to address Joseph's argument that subrogation is precluded by Inter-Ocean's actions in paying a claim for which no coverage exists." (Dissent Op. 4.) However, since we conclude that the subrogation clause is invalid because it is contrary to section 703, it is not necessary or proper for us to address Joseph's alternate argument as part of this appeal.

of her vehicle are covered under her policy. Moreover, Inter-Ocean has no right to seek reimbursement from Joseph. We therefore reverse the trial court's order granting Inter-Ocean's motion for summary judgment.

## DISSENTING OPINION

SWAN, *Associate Justice*, concurring in part dissenting in part. Inter-Ocean Insurance, Inc. brought suit against Camira Joseph seeking reimbursement for damages the insurer paid arising from an accident caused by Joseph's then 18 year old brother. I agree with the majority that Inter-Ocean's payments relating to these injuries were mandated by the Virgin Islands Compulsory Insurance Clause. However, I disagree with the majority and would find that Inter-Ocean is entitled to subrogation. Therefore, I would affirm the trial court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

During the times relevant to this matter, Camira Joseph ("Joseph") had automobile insurance for her white 1989 Honda Prelude Sedan from Lloyds of London, which she purchased through Inter-Ocean Insurance, Inc. ("Inter-Ocean"). Joseph's insurance policy included an express named driver exclusion, designated as Endorsement U-25-1, which stated:

> It is hereby understood and agreed that the insurance afforded by this policy shall [not] apply while any vehicle covered by this policy is being driven or operated by any person under the age of twenty five (25) years or by any person normally resident in the insured's household unless such person is named in the Policy and shown as a named driver or Additional Insured. It is further understood and agreed however that this Exclusion shall not apply to the following person(s) who is/are expressly covered under this Policy.

(J.A. at 11, 40.) On November 8, 2002, Joseph permitted her 18 year old brother, Sheldon Joseph ("Sheldon"), to operate the Honda Prelude. After speeding along Melvin A. Evans Highway, Sheldon Joseph began to swerve and collided with the guard rail. (J.A. at 35-36.) The accident caused injuries to two passengers in the vehicle as well as damage to government property. (*Id.*) Sheldon was cited for reckless driving. (*Id.*)

The passengers and the government filed claims with Inter-Ocean for damages which Inter-Ocean paid. Prior to acting on the claims, Inter-

Ocean sent Joseph a letter notifying her of its intent to tender the policy limits but received no response from Joseph. Subsequently, Inter-Ocean filed a small claims suit for reimbursement for the amount of the payments made for the losses. Pursuant to request by Joseph, the case was transferred to the Civil Division. The trial court ruled that Inter-Ocean was entitled to reimbursement and granted Summary Judgment in Inter-Ocean's favor. This timely appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Accordingly, we have jurisdiction over this appeal.

## III. STANDARD OF REVIEW

In reviewing an order granting Summary Judgment, we exercise plenary review and apply the same test applied by the trial court. *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 468 (V.I. 2013) (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 231, 43 V.I. 361 (3d Cir. 2001)). "Because summary judgment is a drastic remedy, it should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Simpson v. Golden Resorts, LLLP*, 56 V.I. 597, 605 (V.I. 2012). The construction of a statute is also afforded plenary review. *Brady v. Gov't of the V.I.*, 57 V.I. 433, 438 (V.I. 2012).

## IV. DISCUSSION

Joseph contends that the trial court's grant of summary judgment in favor of Inter-Ocean should be reversed for the following reasons: 1) The Virgin Islands Compulsory Insurance clause nullifies the underage driver endorsement provision in the .insurance contract, and 2) Inter-Ocean's action in paying the insurance claim against the under-aged driver, although they were not obligated to do so, precludes it from seeking reimbursement under the subrogation clause of the insurance contract.

At the center of this case is Endorsement U-25-1, a part of the insurance policy. The parties disagree as to how Endorsement U-25-1 can

be reconciled with the Virgin Islands Compulsory Insurance Clause which states that an owner's automobile liability insurance policy:

> Shall insure the person named therein and any other person . . . using any such vehicle . . . with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the . . . use of such vehicle or vehicles in the Virgin Islands[.]

V.I. Code Ann tit. 20 § 703. Inter-Ocean claims that the Virgin Islands Compulsory Insurance Clause in some way mandates that Inter-Ocean provide some initial coverage to Sheldon despite the stipulations of Endorsement U-25-1. Indeed, under the plain meaning of the statute, it is obvious that an insurer must insure not only the named insured on the policy, but any other individual using an automobile with the permission of the insured.[1] Joseph, on the other hand, asserts that the Compulsory Automobile Liability Insurance Act contemplated exceptions to the Compulsory Insurance Clause in 20 V.I.C. § 711 which provides for coverage by virtue of other remedies provided by law. *See* Appellant's Br. at 8. I find the argument concerning other available remedies, which the majority fails to address, to be meritorious.

Further, I agree with the majority that the Virgin Islands Compulsory Insurance Clause nullifies Endorsement U-25-1. However, I disagree with the majority's conclusion that Inter-Ocean is not entitled to subrogation. The majority's application of the antisubrogation rule is contrary to well-established equitable principles. Further, the majority fails to address Joseph's argument that subrogation is precluded by Inter-Ocean's actions in paying a claim for which no coverage exists.

## A. Inter-Ocean is entitled to subrogation

### 1. The Virgin Islands Code does not expressly prohibit subrogation

The majority cites *Fields V. W. Preferred Cas. Co.*, 437 So. 2d 344 (La. Ct. App. 1983) which purportedly is based on statutory provisions

---

[1] The Virgin Islands' Compulsory Automobile Liability Insurance act is not comprehensive and it is silent on the validity of named driver exclusion provisions. *See* V.I. CODE ANN tit. 20 ch. 47. We do not today reach the issue of the substantive validity of named driver exclusions in this jurisdiction because neither party questions the provision's validity on appeal.

identical to our 20 V.I.C. § 703, which affords insurance coverage for drivers under 25 years of age who drive the vehicle with the insured's permission. Interestingly, Louisiana has enacted since *Fields* a provision explicitly allowing for subrogation "for sums in excess of fifteen thousand dollars." LA. REV. STAT. ANN. § 32:866(F). While the Virgin Islands does not have an express subrogation provision, it has a statutory provision which undeniably provides for subrogation where applicable. Title 20 § 711 provides that "[n]othing in this chapter shall be construed as preventing the plaintiff in any action of law, from relying for relief upon any other remedy provided by law."

Furthermore, section 703 only expanded the class of persons covered under the policy and places them on equal footing as the named insured. Section 703 has absolutely nothing to do with subrogation under the policy which is allowed under section 711. Importantly, the heading of section 711 underscores its intent. The heading of section 711 reads "Chapter not to prevent other remedy." We cannot ignore the provisions of section 711 as they relate to the Compulsory Insurance Clause on a whole, because we must consider all the provisions of the Compulsory Automobile Liability Insurance Act when interpreting the meaning of a particular statute. *Corraspe v. People*, 53 V.I. 470, 482 (V.I. 2010) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (*quoting TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001)); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S. Ct. 1811, 100 L. Ed. 2d 313, (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole") (internal citations omitted).

Section 704(c)(3) provides that:

> [t]he policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this Chapter shall constitute the entire contract between the parties.

Moreover, sections 704(c)(3) and 703 only nullify the clause in the insurance policy which withheld coverage to drivers under 25 years of age, driving the vehicle with the insured's permission. Section 704(c)(3) makes clear

that the other provisions of the policy "not in conflict with the provisions of the Chapter shall constitute the entire contract between the parties" and remain in effect and binding on the parties to the policy. There is no explicit prohibition against subrogation in the Compulsory Automobile Insurance Act. Therefore, as long as subrogation is included in the terms of the contract policy, it is allowed under section 704(c)(3). Additionally, because of section 711 provides for "other remedies," which I interpret to include subrogation, there is no conflict in this case. Importantly, we cannot resolve the issue in this case without ascertaining the intent and meaning of section 711.

I must underscore and re-emphasize that section 703 only mandates that coverage for Sheldon be afforded under the policy. However, there is no provision that expressly prohibits subrogation which is explicitly included in the insurance policy and is allowed under section 704(c)(3). Significantly, section 711 allows a plaintiff to seek any other remedy in any action of law as provided by law, which Inter-Ocean is pursuing in this case.

## 2. The antisubrogation rule does not apply here

Whether or not the youthful driver exclusion is invalid under the Compulsory Automobile Liability Insurance Act, Joseph would still be liable for reimbursement to Inter-Ocean under equitable principles. The majority greatly misconstrues the applicability of the subrogation clause between Joseph and Inter-Ocean. The purpose of the antisubrogation rule, which prohibits an insurer from seeking subrogation from its own insured, is to prevent the insurer from passing the loss back to the insured — which would avoid the coverage that the insured paid for. *Continental Divide Ins. Co. v. Western Skies Management, Inc.*, 107 P.3d 1145, 1148 (Colo. App. 2004). *See also* 46A C.J.S. INSURANCE § 1997

Several authorities make clear that the purpose of the antisubrogation rule is to prevent an insurer from failing to provide coverage that was specifically purchased by the insured. *See* 16 COUCH ON INSURANCE (3d) § 224:1 (collecting cases). The majority overlooks a major component to the antisubrogation rule, however, and that is that "the prohibition of insurers' subrogation against their own insureds applies to claims arising from the very risk for which the insured was covered by that insurer." *Id.*; 46A C.J.S INSURANCE § 1997 (collecting cases); 2 ALLAN D. WINDT, INSURANCE CLAIMS & DISPUTES § 10:7 (5th ed. 2012) ("subrogation

should be allowed against an insured when the insured is not entitled to coverage under its policy by reason of the injury or damage caused by the insured"). Numerous state courts have noted that the antisubrogation rule only applies to bar insurance companies from seeking subrogation relating to a claim covered by insurance premiums. *See Bacon v. DBI/SALA*, 284 Neb. 579, 822 N.W.2d 14, 28 (Neb. 2012); *St. John's Univ. v. Butler Rogers Baskett Architects, P.C.*, 92 A.D.3d 761, 938 N.Y.S.2d 578, 580-81 (N.Y. App. Div 2012); *Levy v. Am. Family Mut. Ins. Co.*, 293 P.3d 40, 45 (Colo. App. 2011).

This case is obviously not one where the antisubrogation rule is applicable. As the majority notes, Joseph was given the option but purposefully chose not to purchase insurance coverage for persons under the age of 25. (J.A. at 11). Therefore, it cannot be asserted that there is a risk that in permitting subrogation the court would allow Inter-Ocean to fail to provide coverage for those losses for which Joseph purchased coverage. *See Schwartz v Lipkin & Son*, 76 A.D.2d 141, 430 N.Y.S.2d 356, 357 (N.Y. App. Div 1989) (where an insurer was entitled to subrogation from its insured because insurance policy was not intended to afford additional coverage protection under the circumstances of the case, and thus "the 'spectacle' of the insurance company subrogating against a party for whom it was equally obligated to pay the judgment is totally absent" cancelled the need for the antisubrogation rule). The fact that Joseph was given the option to purchase insurance coverage for persons under the age of 25, and that she knowingly and willingly signed the subrogation clause further supports the conclusion that subrogation should be permitted in this case. Subrogation by an insurer against its own insured can be allowed as long as the policy states such intent in clear and unequivocal language. *Farr Man & Co., Inc. v. M/V Rozita*, 903 F.2d 871, 879 (1st Cir. 1990). *See also Vesta Ins. Co. v. Amoco Production Co.*, 986 F.2d 981, 986 (5th Cir 1993) (holding that insurer's reimbursement action against insured, brought under subrogation clause stipulated in insurance contract, did not violate the principle that insurer may not exercise its right of subrogation against its own insured).

Accordingly, because Joseph knowingly signed a clause stipulating that she is liable to subrogation by Inter-Oceans, the antisubrogation rule is inapplicable here.

### 3. Inter-Ocean is entitled to restitution under equitable principles

The antisubrogation rule is an equitable doctrine that ensures that the person or entity who is liable to pay for specified losses does so in "equity and good conscience." *St. John's Univ.*, 92 A.D.3d at 762-63. "Subrogation serves the purpose of limiting the possibility of a double recovery by the insured, and secures 'the ultimate discharge of the debt by the one who in equity and good conscience ought to pay it.' " *Levy*, 293 P.3d at 45. Equitable principles not only protect insureds against having to pay damages arising from losses that were covered by policy terms paid for by premiums, but equity also protects insurers from being liable for losses where coverage was not paid for by the insured.

The general principle of the law of restitution is that the payor is entitled to restitution from the payee for funds not required by the contract — even if such payment were made under the mistaken belief of law or fact. Donald M. Zupanec, *Right of Insurer Under Health or Hospitalization Policy to Restitution of Payments Made Under Mistake*, 79 A.L.R.3d 1113 (1977). This general rule is not dispositive, however, and a payor's entitlement to restitution depends on the individual circumstances surrounding a case and the balancing of competing equities. *State Farm Mut. Auto. Ins. Co. v. Sabourin*, 574 S.W.2d 8, 10 (Mo. Ct. App. 1978) ("It has long been recognized . . . that an insurer who pays a claim under an erroneous belief induced by a mistake of fact that it was obligated to do so may recover the payment unless the insured has so changed his position that it would be unjust to require restitution") (citation omitted). In a case, such as here, where the insurer made a payment to a third party, an action against the insured, and not the third party is warranted. *Aetna Cas. & Sur. Co. v. Melancon*, 348 So.2d 717, 718 (La. App. 1977).

Joseph's brother, Sheldon, caused injury to passengers due to his reckless driving of Joseph's vehicle and therefore faced liability to the passengers for their injuries. The Compulsory Insurance Clause makes an automobile owner liable to victims for injuries cause by a permissive user. Inter-Ocean's recognition of coverage for these injuries to the passengers or the paying for the damages caused by him has made Joseph unjustly enriched because no premium was paid by Joseph for these damages. The Restatement of the Law is clear that "[a] person who is unjustly enriched

at the expense of another is subject to liability in restitution." RESTATEMENT THIRD, RESTITUTION AND UNJUST ENRICHMENT § 1 (2011). A person who is unjustly enriched is liable to restitution even if the payment was made by mistake. *Id.* at § 6. *See also Western Cas. & Sur. Co. v. Kohm*, 638 S.W.2d 798, 801 (Mo. App. 1982) ("It has long been accepted that a payor's lack of care will not diminish his right to recover, or somehow justify retention of the windfall by an unintended beneficiary").

There are no facts in this case that demonstrate an exception to the general rule allowing restitution that would allow Joseph to escape liability in restitution to Inter-Ocean. For instance, some courts have held that an insured is not liable to reimburse payments made under mistake of fact, where the circumstances of the insured have so changed as a result of the payment that it would be inequitable to require restitution. *CSX Transp., Inc. v. Appalachian Railcar Services, Inc.*, 509 F.3d 384, 388 (7th Cir. 2007); *Myèrs v. Fidelity & Cas. Co. of New York*, 759 F.2d 1542, 1548 & n.9 (11th Cir. 1985); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App. 2012); *Sabourin*, 574 S.W. 2d at 10; *Kohm*, 638 S.W.2d at 800. Joseph has failed to prove that Inter-Ocean's payment of damages to the injured passengers substantially changed her circumstances so that it would be inequitable to require restitution. *See Lincoln Nat. Life Ins. Co. v. Rittman*, 790 S.W.2d 791, 793 (Tex. App. 1990) ("Where the claimant has proved that the recipient has received things under circumstances which would create the right to restitution, the recipient has the burden of proving a sufficient change of circumstances to make it inequitable for the claimant to have restitution") (internal citations and quotation marks omitted). *See also Messersmith v. G.T. Murray & Co.*, 667 P.2d 655, 657-58 (Wyo. 1983) and *First Nat. City Bank v. McManus*, 29 N.C. App. 65, 223 S.E.2d 554, 558 (1976). This is the situation contemplated by section 711 of Title 20 of the Virgin Islands Code.

The facts of this case further do not demonstrate an "assumption of risk" exception to the general rule of restitution. Some courts have held that an insurer may not be entitled to restitution where it makes a payment in the nature of a compromise of a dubious liability, thereby "assuming the risk" of non-recovery of payment. *See Mid-Century Ins. Co. of Washington v. Brown*, 33 Wn. App. 291, 654 P.2d 716, 719 (1982) and *Mongrue v. State Farm Mut. Auto. Liability Ins. Co.*, 396 So.2d 466, 468-69 (La. Ct. App. 1981). Here, the payment made by Inter-Ocean can

hardly be said to have been made in compromise of uncertain liability. Although Inter-Ocean might have been mistaken in paying out claims to the injured passengers, the payments were not made in compromise. Further, Inter-Ocean reserved their rights to recover payment in a subrogation clause found in the policy. (J.A. at 32). This is further affirmation that Inter-Ocean did not assume the risk of non-recovery.

Joseph and her brother Sheldon received coverage for these damages when such coverage was not paid for and was in fact expressly waived by Joseph. To prohibit Inter-Ocean from recovering would result in an unjust enrichment to Joseph. To avoid such a result, subrogation, as stipulated in the insurance contract, should be allowed.

## B. Endorsement U-25-1 is not waived by virtue of Inter-Ocean's actions in paying claims alone

As described above, the antisubrogation rule does not apply because Joseph did not purchase coverage that included coverage of under-aged drivers. Therefore, if both parties contracted for Inter-Ocean to have the right to subrogation, this contractual provision should be enforced as part of the insurance policy "which is not in conflict with [the Virgin Islands Compulsory Insurance Act." 20 V.I.C. § 703. Joseph asserts, however, that Inter-Ocean's actions in paying the claim made against her under-aged brother, despite the fact that they were not contractually obligated to do so, effectively invalidated Inter-Ocean's subrogation rights. However, Inter-Ocean's action in providing coverage where it was not obligated to do so is not enough to invalidate a provision of an insurance contract.

There are two legal doctrines, applicable to this case, in which insurance companies' actions affect the validity of an insurance contract; the principles of estoppel and waiver. The waiver doctrine involves the intentional relinquishing of rights under a policy by the insurance company. 7 Couch on Insurance (3d). § 101:8 (collecting cases). The estoppel doctrine applies where an insured relies on the conduct of the insurer to her detriment. *Id.* The quintessence of Joseph's argument is that by providing coverage to the parties injured by the driving of Sheldon Joseph although they were not liable for such coverage, Inter-Ocean has waived the Endorsement U-25-1 or is estopped from enforcing it.

Based on the prevailing case law of a number of jurisdictions, it is rarely the case that an insurance company's actions will serve to waive or

estop a provision of the insurance contract. The vast majority of courts have held that the principles of estoppel and waiver cannot serve to expand coverage of an insurance policy for risks expressly not covered by the terms of the policy. *See Heacker v. Safeco Ins. Co. of America*, 676 F.3d 724, 727 (8th Cir. 2012); *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 441 (5th Cir. 2007); *OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*, 242 Fed. Appx. 936, 942 (4th Cir. 2007); *Alan Corp. v. International Surplus Lines Ins. Co.*, 22 F.3d 339, 343 (1st Cir. 1994); *Cambridge Mut. Fire Ins. Co. v. Sakon*, 132 Conn. App. 370, 31 A.3d 849, 859 (2011); *JN Auto Collection, Corp. v. U.S. Sec. Ins. Co.*, 59 So.3d 256, 257-58 (Fla. Dist. Ct. App. 2011).

It has been held to be against public policy to extend coverage where the insurer never intended to provide such coverage, in circumstances in which the insured never paid premiums to purchase such coverage. *OneBeacon Ins. Co.*, 242 Fed. Appx. at 942 ("an extension of coverage may only be created by a new contract.") (internal citation and quotation marks omitted"); *Design Professionals Ins. Co. v. Chicago Ins. Co.*, 454 F.3d 906, 912-13 (8th Cir. 2006); *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 314 (5th Cir. 2005). In essence, courts decline to allow the doctrines of estoppel and waiver to create a contract, where the parties never intended, and where no consideration for the extension or creation of a contract had been given. *Assicurazioni Generali S.P.A. v. Black & Veatch Corp.*, 362 F.3d 1108, 1114 (8th Cir. 2004) and *Inland Mut. Ins. Co. v. Hightower*, 145 So.2d 422, 434 (Ala. 1962) (on rehearing).

The doctrines of estoppel and waiver would apply in limited situations to expand the insurance policy, and make Inter-Ocean liable to cover the damages which it was not liable for. This case is not such a case.

## 1. Doctrine of Estoppel

In the insurance context, the essential elements of estoppel are conduct by an insurer that induces an insured to reasonably rely on the conduct to her detriment. *See Keystone Filler & Mfg. Co., Inc. v. American Mining Ins. Co.*, 179 F.Supp.2d 432, 443 (M.D. Pa 2002), *aff'd* 55 Fed. Appx. 600 (3d Cir. 2002). The elements of justifiable reliance and prejudice must always be present for the doctrine of estoppel to prevail over an insurers conduct. *Level 3 Communications, Inc. v. Federal Ins. Co.*, 168 F.3d 956, 959-60 (7th Cir. 1999).

The doctrine of estoppel would not apply in this case because Joseph has not shown that Inter-Ocean's action of making a payment that it was not required to make prejudiced her in that she did not have forewarning that she would have to reimburse Inter-Ocean if they covered any claims for drivers under 25. An insured is charged with the knowledge of what is covered by the insurance contract. *See id.* at 959 (holding that insured had no basis to claim estoppel due to insurer's delay in asserting an exclusion because the insured "could read the insurance contract as well as [the insurer' and there, staring it in the face; was a clause that clearly barred coverage"). There is nothing in the record to support a claim that Joseph reasonably relied on Inter-Ocean's action of covering damages caused by Sheldon, in any way that supports a claim that such injuries must be deemed within the actual coverage of this policy. Joseph signed and dated the U-25-1 endorsement, so she was well aware that the damages caused by her brother were not covered by the endorsement. Joseph also cannot contend that she reasonably relied on Inter-Ocean's payment of damages to mean that the U-25-1 endorsement was rescinded and unenforceable. Joseph even concedes in her brief that the injured parties had other legal remedies available to them other than through Inter-Ocean. (Appellant's Br. at 9). Accordingly, Joseph could not have been prejudiced by Inter-Ocean's actions. She acknowledges that she would have had to pay damages had the injured parties sought remedies through legal recourse. She therefore would have had to pay damages whether or not Inter-Ocean paid the claims. At no time did Inter-Ocean make a claim or representation to Joseph regarding her release from an obligation to cover the injured parties. Accordingly, Joseph could not have reasonably relied on Inter-Ocean's actions in a manner that prejudiced her. *See Riverside Ins. Co. v. McDowell*, 576 S.W.2d 268, 269 (Ky. Ct. App. 1979) (holding that no basis existed to estop insurer from seeking to recover from insured benefits paid to the insured under a mistaken impression that such benefits were required by law, where insurer made no misrepresentations to insured and insured was not unaware of real facts pertaining to liability of the insurer, and insurer's payment of benefits did not change insured's position to his prejudice).

## 2. Waiver

Joseph's contentions would similarly fail under the waiver doctrine. In the context of insurance policies, the waiver doctrine involves the

intentional relinquishment of a known right by the insurer. On the facts of this case, however, an argument cannot reasonably be made that Inter-Ocean intended to relinquish its right to not be liable for injuries or damages cause by drivers under the age of 25 as agreed under the U-25-1 endorsement. Inter-Ocean expressly reserved its rights to recover payment and to be reimbursed in the insurance policy. (J.A. at 32). This reservation of right evinces that Inter-Ocean did not intend to relinquish its rights not to be held liable for injuries or damages caused by drivers under the age of 25. It is usually not "an insurance company's intention to provide an insured coverage that was not purchased. Agreeing to afford coverage when only doubt existed as to whether coverage was owed is not the intentional relinquishment of a known right." 2 WINDT, INSURANCE CLAIMS & DISPUTES § 6:35. Accordingly, neither waiver or estoppel principles would serve to prohibit Inter-Ocean from pursuing subrogation against Joseph merely because it initially made payments for damages not covered by the terms included in the insurance contract.

## VI. CONCLUSION

For the reasons elucidate above, the trial court's Summary Judgment Order in favor of Inter-Ocean should be affirmed.